IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

ESTHER R. HUGHETT )
)
v. ) No. 2:11-0075
) Judge Wiseman/Bryant
SOCIAL SECURITY ADMINISTRATION )

To:     The Honorable Thomas A. Wiseman, Jr., Senior Judge

### REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. §§ 405(g) and 1383(c), to obtain judicial review of the final decision of the Social Security Administration ("SSA" or "the Administration"), through its Commissioner, denying plaintiff's applications for child's insurance benefits, disability insurance benefits, and supplemental security income, as provided under the Social Security Act. The case is currently pending on plaintiff's motion for judgment on the administrative record (Docket Entry No. 12), to which defendant has responded (Docket Entry No. 14). Upon consideration of these papers and the transcript of the administrative record (Docket Entry No. 7),[1] and for the reasons given below, the undersigned recommends that plaintiff's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

### I. Introduction

Plaintiff filed her applications for benefits on October 16, 2008, and January 26, 2009, alleging disability onset as of September 30, 1993. (Tr. 106-24) The applications

---

[1] Referenced hereinafter by page number(s) following the abbreviation "Tr."

were denied at the initial and reconsideration stages of agency review, whereupon plaintiff requested *de novo* hearing of her case by an Administrative Law Judge (ALJ). The ALJ hearing was held on March 16, 2010, and testimony was received from plaintiff and an impartial vocational expert. (Tr. 28-42) Plaintiff was represented by counsel at the hearing.

On May 10, 2010, the ALJ issued a written decision denying plaintiff's claim to benefits. That decision contains the following enumerated findings:

1. Born on December 13, 1975, the claimant had not attained age 22 as of September 30, 1993, the alleged onset date (20 CFR 404.102, 416.120(c)(4) and 404.350(a)(5)).

2. The claimant has not engaged in substantial gainful activity since September 30, 1993, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: seizures, migraine headaches, and depression/anxiety (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration fo the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant would be limited to simple, low level detail tasks with some difficulty. She may experience slight difficulty interacting with the general public but is capable of adapting to infrequent changes in the work setting.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 13, 1975 and was 17 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education and is able to communicate in English

(20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 30, 1993, through the date of this decision (20 CFR 404.350(a)(5), 404.1520(g) and 416.920(g)).

(Tr. 15-17, 20-21)

On May 25, 2011, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 1-3), thereby rendering that decision the final decision of the Administration. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. §§ 405(g), 1383(c)(3). If the ALJ's findings are supported by substantial evidence, based on the record as a whole, then those findings are conclusive. Id.

## II. Review of the Record

The following summary is excerpted from the ALJ's decision. (Tr. 17-19).

The claimant testified at the hearing that she has pain in her head, arms, legs, and sides. She stated that she has no problems standing or walking, but that she has to change positions after sitting for 1 hour. The claimant also reported that she has a seizure disorder, but that her last known seizure was in 2000. She indicated that she had brain surgery in 2000 and that her seizures used to occur about once a month. According to the claimant, she is able to cook, care for her personal needs, and perform work around the house. It was noted that the claimant drove to the hearing using a navigation system. She indicated that she uses a computer for about 30 minutes a day. The claimant reported that she has worked several jobs, but that she would sometimes get confused

and others would have to help her on the job. She indicated that she has attended vocational rehabilitation and that she has been working through [P]acesetters. According to the claimant, she works 20-25 hours in 5-hour shifts. The claimant stated that she used to administer medication but that she can no longer perform those duties due to her memory problems. She indicated that she has problems with concentration and that she gets anxious in stores or groups. The claimant also noted that she had an annulment in January 2009.

The medical evidence of record reveals that the claimant has a long history of a seizure disorder. The records indicate that the claimant underwent a right temporal lobectomy in December 1999 for a history of refractory seizures. She was followed by Dr. Bassel Abou-Khalil. Dr. Abou-Khalil indicated in annual follow-up visits that the claimant had no seizure activity. The claimant was maintained on medications. It was noted in a follow-up visit in October 2005, that the claimant reported experiencing some daily auras, but no full blown seizures. Dr. Abou-Khalil noted that the claimant admitted to occasionally missing a dose of medication. It was noted that the claimant also had some complaints of depressive symptoms, but that she denied any problems with concentration or headaches. The provider felt that her seizures were generally under good control with medications. By October 2007, it was again noted that the claimant denied any seizure activity, despite the additional stress of a failed pregnancy. Treatment records indicate that the claimant underwent surgery in March 2007 for a right tubal pregnancy (Exhibits B-2F and B-18F).

In continued visits with Dr. Abou-Khalil throughout 2008, it was noted that the claimant continued to deny any seizure activity, but reported "pressure in her head." The provider noted that the claimant also had some difficulty with concentration, confusion, and understanding words. In December 2008, the claimant indicated that she was feeling depressed, partially due to being separated from her husband. She was continued on medications and later reported that she had gotten a job through vocational rehabilitation and pacesetters. In November 2008, the claimant also underwent a Neuropsychological Evaluation by Andrew John Phay, Ph.D. Dr. Phay noted that the claimant reported a history of seizure problems and feels that mental problems as a young girl were part or totally the result of undiagnosed seizures. She reported undergoing brain surgery and tubal pregnancy surgery. It was noted that the claimant indicated that she is able to cook, clean, drive, and handle a bank account. According to the claimant, she had some

4

occasional suicidal ideations when her marriage ended, but none recently. It was further noted that the claimant reported problems with crying spells, memory, and concentration. The examiner noted that the claimant showed no signs of anxiety. It was felt that the claimant functioned in the low average range of intellectual functioning. The claimant was assessed with a cognitive disorder, NOS; generalized anxiety disorder, rule out dysthymia; and dependent personality disorder

The claimant also underwent a consultative psychological evaluation on December 29, 2009, performed by Mark Loftis, M.A. The examiner noted that the claimant reported that she was in the process of getting an annulment so that she could get her benefits back. According to the claimant, this was her 5th marriage. The claimant reported that she had several jobs, but that they all ended in 3 months or less. Mr. Loftis indicated that the claimant denied any suicidal ideations and noted that her thought content and processes were logical and coherent. He further noted that the claimant functioned in the low to average range. According to the claimant, she has been treated with Effexor for depression and indicated that her depressive symptoms began as a child due to being abused by a stepfather. It was noted that the claimant reported that she had not experienced any significant seizures since her brain surgery, but that she has had some aura at times. According to the claimant, she rated her depression symptoms as 5 out of 10 and her anxiety as 4 out of 10. She was assessed with a depressive disorder, NOS and anxiety disorder, NOS. Mr. Loftis indicated that the claimant was mildly to moderately impaired in her ability to understand and remember instructions, but only mildly impaired in her ability to perform simple, repetitive tasks. He further indicated that the claimant was mildly to moderately impaired in her ability to maintain concentration, interact socially, and adapt to work changes (Exhibit B-6F).

The claimant was also seen in therapy with Jennifer Kelly, LCSW, through Agape Faith Based Counseling in 2009 and early 2010. Although Ms. Kelly noted that the claimant reported that she had difficulty with self esteem, confusion, and anxiety, the claimant also indicated that she was doing well on her job in a visit in August 2009. Ms. Kelly later indicated that the claimant's global assessment of functioning (GAF) was 60, indicating only moderate symptoms or moderate difficulty in social, occupational, or school functioning (Exhibits B-15F and B-17F).

Plaintiff's file was also reviewed by Dr. Rebecca Sweeney, who opined on

5

January 22, 2009, that plaintiff suffered mild-to-moderate mental limitations resulting in the following functional restrictions: "Claimant can complete simple and low-level detailed tasks, despite some difficulty[;] Claimant will experience some, but not substantial, difficulty interacting with the general public[;] Claimant can adapt to infrequent change and set limited goals." (Tr. 352-68) Also, between March 9 and March 31, 2009, plaintiff consulted the Tennessee Division of Rehabilitative Services for a vocational evaluation. (Tr. 192-98) That agency determined that plaintiff would have limited ability to interact with others in a socially appropriate manner. The vocational examiner believed that plaintiff was capable of entering into competitive employment, following appropriate training, at a semi-skilled to skilled level. Id.

### III. Conclusions of Law

#### A. Standard of Review

This court reviews the final decision of the SSA to determine whether that agency's findings of fact are supported by substantial evidence in the record and whether the correct legal standards were applied. Elam ex rel. Golay v. Comm'r of Soc. Sec., 348 F.3d 124, 125 (6th Cir. 2003). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007)(quoting Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 286 (6th Cir. 1994)). Even if the evidence could also support a different conclusion, the SSA's decision must stand if substantial evidence supports the conclusion reached. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 389 (6th Cir. 1999).

6

### B. Proceedings at the Administrative Level

The claimant has the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." Id. at § 423(d)(3). In proceedings before the SSA, the claimant's case is considered under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

> 1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2) A claimant who does not have a severe impairment will not be found to be disabled.
>
> 3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.
>
> 4) A claimant who can perform work that he has done in the past will not be found to be disabled.
>
> 5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Cruse v. Comm'r of Soc. Sec., 502 F.3d 532, 539 (6th Cir. 2007)(citing, e.g., Combs v. Comm'r of Soc. Sec., 459 F.3d 640, 642-43 (6th Cir. 2006)(en banc)); 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f).

The SSA's burden at the fifth step of the evaluation process can be carried by relying on the medical-vocational guidelines, otherwise known as "the grids," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. See Wright v. Massanari, 321 F.3d 611, 615-16 (6th Cir. 2003). Otherwise, the grids cannot be used to direct a conclusion, but only as a guide to the disability determination. Id.; see also Moon v. Sullivan, 923 F.2d 1175, 1181 (6th Cir. 1990). In such cases where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert ("VE") testimony. See Wright, 321 F.3d at 616 (quoting Soc. Sec. Rul. 83-12, 1983 WL 31253, *4 (S.S.A.)); see also Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity ("RFC") for purposes of the analysis required at steps four and five above, the SSA is required to consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. See 42 U.S.C. §§ 423(d)(2)(B), (5)(B); Foster v. Bowen, 853 F.2d 483, 490 (6th Cir. 1988).

### C. Plaintiff's Statement of Errors

Plaintiff argues that the ALJ erred in finding her less than fully credible, when the evidence relied upon by the ALJ acknowledged the credibility of her subjective complaints, or at least did not call into question her credibility as a witness. In particular, plaintiff points to the report of Dr. Rebecca Sweeney, a nonexamining psychological

8

consultant, to which the ALJ assigned great weight. (Tr. 19, 352-69) In her report, Dr. Sweeney found as follows:

> The claimant's allegations are credible, as the diagnoses of cognitive disorder, NOS; depressive disorder, NOS; and anxiety disorder, NOS could reasonably produce the stated symptoms and functional limitations. The severity alleged is not inconsistent with the objective findings. In addition, the functional limitations described by the claimant do demonstrate consistency throughout the case record.

(Tr. 364) Nonetheless, Dr. Sweeney went on to note her agreement with Dr. Loftis' assessment of mild to moderate functional limitations resulting from plaintiff's cognitive, depressive, and anxiety disorders (Tr. 346-47), and further concluded as follows:

> The claimant's symptoms and impairments would not singly or in combination prevent the claimant from completing work-like activities; however memory, concentration, pace, and persistence is somewhat impacted by the diagnosis of cognitive disorder, NOS; depressive disorder, NOS; and anxiety disorder, NOS; and therefore would cause moderate limitations in basic work-like duties.

(Tr. 364)

It is the province of the ALJ to judge the credibility of a claimant's subjective complaints, under the rubric set forth in the regulations at 20 C.F.R. § 404.1529. Under § 404.1529(c)(1), "[w]hen the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, ... we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work[,] . . . consider[ing] all of the available evidence, including your history, the signs and laboratory findings, and statements from you, your treating or nontreating source, or other persons about how your

9

symptoms affect you. We also consider the medical opinions [of record]." Significant deference is due the ALJ's credibility finding, e.g., Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003), though it must still be supported by substantial evidence.

In the case at bar, the ALJ explained his credibility determination as follows:

> In terms of the claimant's alleged mental problems, . . . the medical evidence fails to support a finding that the claimant is significantly limited in her ability to perform some type of work activity or activities of daily living. The records indicate that the claimant has worked several jobs and indicated that she is able to cook, drive, and perform household chores without any significant difficulties. There is no indication that the claimant's physicians or treating providers have placed any restrictions of her ability to perform work activity. . . . The claimant has had some mental health counseling, however, the claimant's therapist, Ms. Kelly, indicated that the claimant had a GAF of 60, which is indicative of only moderate symptoms in functioning. Additionally, the consultative examiner, Mr. Loftis, noted that the claimant was essentially only mildly to moderately limited in functioning. . . . In addition, Dr. Sweeney reported that the claimant was able to complete simple, low-level detailed tasks, despite some difficulty. She further indicated that the claimant was not significantly limited in her ability to interact appropriately with others and that she was capable of adapting to infrequent change.

(Tr. 19) Contrary to plaintiff's contention, this analysis goes well beyond the "meaningless window dressing" of a canned-language, concluding paragraph, and indeed reflects the substantial evidence required to sustain the ALJ's credibility finding. Dr. Sweeney's credibility finding does not offset her assessment of specific, work-related limitations owing to the credible effects of plaintiff's mental impairments, which assessment was plainly viewed by Dr. Sweeney as consistent with plaintiff's alleged symptoms, and is likewise consistent with the opinion of Dr. Loftis; plaintiff's level of daily activity; and, as ultimately found by the ALJ, plaintiff's ability to perform jobs involving simple tasks with a low level of

10

detail and infrequent changes in routine. The undersigned finds no error in the ALJ's consideration of plaintiff's subjective complaints in light of the medical and other evidence of record.

Plaintiff next contends that the ALJ could not properly rely upon the vocational expert testimony in this case because that testimony was elicited in response to a hypothetical question which did not include all of plaintiff's work-related limitations. By association, plaintiff contends that the ALJ's finding of her RFC was likewise incomplete. Specifically, plaintiff contends that neither the RFC finding nor the hypothetical to the expert considered her difficulties with memory and concentration, nor, as noted by Dr. Sweeney, her difficulty handling stress or change in her routine. (Tr. 368) However, this is manifestly untrue, as the ALJ's RFC finding, echoed in his hypothetical to the expert, explicitly adopted Dr. Sweeney's assessment of work-related limitations owing to her "understanding and memory" and "sustained concentration and persistence" ("claimant can complete simple and low-level detailed tasks, despite some difficulty"); her "social interaction" ("claimant will experience some, but not substantial, difficulty interacting with the general public"); and her "adaptation" ("claimant can adapt to infrequent change and set limited goals" (compare Tr. 17 and Tr. 40-41 with Tr. 366-68). Thus, this claim of error has no merit.

Plaintiff further claims that the ALJ failed to consider that her lack of past relevant work, combined with evidence that she had difficulty performing her past job at Pacesetters (performed 4 or 5 days a week in five-hour daily shifts) and ultimately lost that job, demonstrate her inability to perform work activities 8 hours a day, for five days a week,

11

as required to maintain gainful employment. Citing Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *2 (defining "residual functional capacity" in terms of maximum activity sustainable on a regular and continuing basis; "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."). However, plaintiff testified that her past work at Pacesetters, where she provided in-home care for mentally challenged adults, entailed assisting the clients off the bus after their return home, deciding their daily menu, cooking, cleaning, and assisting them with bathing and other personal care; she had to work short shifts because longer, 8-hour shifts bring "too much pressure." (Tr. 35-37) By comparison, the unskilled, repetitive jobs identified by the vocational expert as within plaintiff's residual functional capacity to perform, including hand packager, machine cleaner, and sorter, would not appear to involve anything close to the level of responsibility or job stress that plaintiff dealt with at Pacesetters. In short, there is no evidence in the record to suggest that plaintiff could not sustain regular and continuing work at any of the stable, unskilled, relatively undetailed jobs relied upon by the ALJ here. Plaintiff's argument to the contrary is without merit.

Lastly, plaintiff seeks, in the alternative, to have the case remanded without reversal, for consideration by the agency of new and material evidence in the form of one record of disciplinary action against her during April of 2010 while at Pacesetters, and records from Dr. Abou-Khalil's office during May-July 2010, including two letters summarizing plaintiff's cognitive symptoms/limitations and one treatment note dated June 21, 2010. (Tr. 209-13) In the later and more salient of Dr. Abou-Khalil's letters, dated July 27, 2010, and addressed to plaintiff's prospective cognitive rehabilitation counselor, Dr.

Abou-Khalil lists the following cognitive deficits suffered by plaintiff:

1. Cannot do multi-functional work.
2. Can concentrate on one thing only at a time.
3. Cannot think fast or make quick decisions.
4. Loss of short term memory is severe.
5. Uses "picture" memory for word finding.
6. Must use repetition to remember tasks.
7. Feels unobservant to surroundings.

(Tr. 209)

Remand under the sixth sentence of 42 U.S.C. § 405(g) may be ordered "only upon a showing that there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Material evidence is evidence that would likely change the ALJ's decision. Bass v. McMahon, 499 F.3d 506, 513 (6th Cir. 2007). As to the requirement of good cause, the Sixth Circuit takes a "harder line" on this showing, requiring a "valid reason" for not submitting evidence prior to the ALJ hearing. E.g., Oliver v. Sec'y of Health & Human Servs., 804 F.2d 964, 966 (6th Cir. 1986). While the evidence which is the subject of the alternative remand request is new, in that it did not come into existence until after the March 2010 ALJ hearing, plaintiff has not demonstrated materiality or good cause. She argues that the records are material because they pertain to her condition throughout the pendency of her claim and demonstrate that her symptoms and resulting difficulties were ongoing. However, the mere demonstration the plaintiff's impairment-related limitations were ongoing does nothing to establish the likelihood that the evidence would change the ALJ's decision to deny benefits. Moreover, the cognitive deficits identified by Dr. Abou-Khalil appear to have largely been

13

Case 2:11-cv-00075    Document 15    Filed 02/08/13    Page 13 of 15 PageID #: 506

accounted for in the assessments of Drs. Sweeney and Loftis, and in the ALJ's finding of plaintiff's RFC. Plainly, these records would not be likely to cause a reversal of fortune for plaintiff before the agency.

Furthermore, plaintiff asserts that good cause exists for her failure to incorporate the new evidence into the record prior to the ALJ hearing "because the treatment occurred several months after the hearing." (Docket Entry No. 13 at 13) However, this merely means that the evidence is "new." As referenced above, the Sixth Circuit takes a harder line on the good cause test, requiring a valid reason for not pursuing the new treatment in time to incorporate the evidence thereof into the record before the ALJ. E.g., Oliver, supra. Plaintiff has made no showing that her failure to adduce timely this summary of findings from Dr. Abou-Khalil (or indeed any opinions from any treating physicians directed toward the disability determination process) should be excused, such that a remand for further agency consideration would be in order. Having failed to meet this burden, plaintiff's alternative request for remand must be denied.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that plaintiff's motion for judgment on the administrative record (Docket Entry No. 12) be DENIED, and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections

filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. Thomas v. Arn, 474 U.S. 140 (1985); Cowherd v. Million, 380 F.3d 909, 912 (6th Cir. 2004)(en banc).

    **ENTERED** this 8th day of February, 2013.

                                          s/ John S. Bryant
                                          JOHN S. BRYANT
                                          UNITED STATES MAGISTRATE JUDGE